UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


ALFONSO NUZZO and LESA NUZZO                                    PLAINTIFFS


V.                                           CIVIL ACTION NO.  3:19-CV-210-KHJ-LGI


STATE FARM MUTUAL AUTOMOBILE                              DEFENDANT
INSURANCE COMPANY

ORDER

        This action is before the Court on various motions. For the reasons below, the

Court finds the following:

        1.      Plaintiffs Alfonso Nuzzo and Lesa Nuzzo's (collectively "the Nuzzos")

Motion for Summary Judgment on State Farm's Contractual Liability [71] is

denied;

        2.      Defendant State Farm Mutual Automobile Insurance Company's

("State Farm") Motion for Partial Summary Judgment [73] is granted;

        3.      State Farm's Motion to Strike Louis G. Fey, Jr. [75] is denied as moot;

        4.      State Farm's Motion in Limine to Bifurcate Trial [79] is denied as

moot;

        5.      State Farm's Motion in Limine to Preclude Testimony, Evidence, and

Argument Related to the Interpretation of Insurance Policy Provisions, Mississippi

Law and State Farm's Guidelines [81] is granted;

6.     The Nuzzos' Motion in Limine to Preclude Evidence for Argument as to Lack of Contact Between Vehicles in Accident [96] is denied; and

7.     The Nuzzos' Motion in Limine Re: (1) Collateral Source Payment of Income and Medical Expenses; and (2) Expert Testimony as to Legal Conclusions [115] is granted in part and denied in part.

I.     Facts and Procedural History

This case stems from an automobile accident occurring in 2016. Plaintiff Alfonso Nuzzo was involved in a previous motor vehicle accident in 2007, where State Farm paid him $750,000.00 in uninsured motorist bodily injury benefits. Ex. A to Motion [73-1] at 53:10-54:16. Mr. Nuzzo continues to receive medical treatment for injuries from that accident, as well as for rheumatoid arthritis, fibromyalgia, and lumbar spinal stenosis. *Id.* at 15:17-16:18, Ex. 18.

On August 26, 2016, Mr. Nuzzo filed a claim with State Farm for a collision in April of that year, when an unidentified vehicle allegedly sideswiped his vehicle ("the Accident"). Nuzzo Depo., Ex. A to Motion [73-1] at 3:9-16, 13:3-7. Parties agree Mr. Nuzzo held five insurance policies with State Farm that provided stacked uninsured motorist bodily injury coverage of $1,250,000.00.

State Farm opened a file on Mr. Nuzzo's claim on September 1, 2016. Claim File Excerpts, Ex. B to Motion [73-2] at 66.[1] Despite State Farm's efforts to obtain Mr. Nuzzo's complete medical records, some of his medical providers still owed State Farm medical records as late as October 2018. *Id.* at 11-12, 14-25, 59, 63.

---

[1] The Court refers to the printed page number of the excerpted document.

Once State Farm received all relevant medical records, it retained experts in October 2018 and waited for reports from those experts before proceeding on its adjustment of the claim. *Id.* at 10. State Farm received the expert reports in December 2018. *Id.* at 8-9. State Farm had fully evaluated the case by the following month, with the adjuster recommending an offer to Mr. Nuzzo for a compromised value of $145,595.45. *Id.* at 6. The adjuster then sought authorization for this amount. *Id.* State Farm tendered this amount unconditionally to Mr. Nuzzo on July 26, 2019. Tender Letters, Ex. D to Motion [73-4].

Before State Farm tendered this amount, Mr. Nuzzo's attorney sent a letter to State Farm dated February 25, 2019, requesting State Farm advise by March 15, 2019, whether it would pay Mr. Nuzzo's claim. Izykowski Depo., Ex. 2 to Response [104-2] at Ex. 16. State Farm responded that it was not denying Mr. Nuzzo's claim and was open to settlement discussions. *Id.* at Ex. 17. Rather than discuss settlement, the Nuzzos sued on March 29, 2019. Compl. [1]. The Nuzzos' Amended Complaint [20] brings claims for breach of contract, tortious breach of contract, gross negligence, and loss of consortium, seeking compensatory damages and extracontractual damages including punitive damages and attorneys' fees.

II.     Motions for Summary Judgment

    A.     Standard

Both Parties file motions for partial summary judgment under Federal Rule of Civil Procedure 56. When considering a motion under Rule 56, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law,
'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941
F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy
Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the
evidence is such that a reasonable [factfinder] could return a verdict for the
nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019)
(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a
motion for summary judgment, "the judge's function is not [her]self to weigh the
evidence and determine the truth of the matter but to determine whether there is a
genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019)
(quoting *Anderson*, 477 U.S. at 249).

"If the burden at trial rests on the non-movant, the movant must merely
demonstrate an absence of evidentiary support in the record." *Bayle v. Allstate Ins.
Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*,
232 F.3d 473, 477 (5th Cir. 2000)). Once the movant meets this requirement, "the
burden shifts to the non-movant to produce evidence of the existence of such an
issue for trial." *Id.* (quoting *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170,
174 (5th Cir. 2000)). The non-movant must present more than "speculation,
improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321
(quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir.
2015)). "A failure on the part of the nonmoving party to offer proof concerning an

4

essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991)).

B.      The Nuzzos' Motion for Summary Judgment [71]

The Nuzzos request summary judgment on State Farm's contractual liability. They argue the doctrines of waiver and estoppel bar State Farm from introducing any evidence at trial about a lack of "physical contact" between the two cars in the Accident. The proper mechanism to exclude evidence, however, is a motion in limine, which the Nuzzos have filed, and the Court addresses below. As for summary judgment, the Court addresses only the arguments that State Farm waived or is estopped from denying any liability for Mr. Nuzzo's injuries and that the case should proceed only as to damages and State Farm's alleged bad faith.

Under Mississippi law, the doctrines of waiver and estoppel bar an insurer "from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel." *Gilley v. Protective Life Ins. Co.*, 17 F.3d 775, 781-82 (5th Cir. 1993) (citing *Emps. Fire Ins. Co. v. Speed*, 133 So. 627, 629 (Miss. 1961)). Neither doctrine can be invoked "to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded." *Id.* at 781. Under these doctrines, then, the Court can preclude State Farm from arguing that Mr.

Nuzzo's policies were forfeited or in some other way invalidated, but not from arguing that the policies do not provide coverage for his injuries. *See id.* at 781-82.

State Farm represents it does not and will not contest that the Accident took place or that "physical contact" occurred between the two vehicles to disclaim uninsured motorist benefits entirely. Memo. in Opposition [83] at 2. Instead, State Farm disputes the severity of the "physical contact" and whether it caused Mr. Nuzzo's injuries. *Id.* State Farm does not deny Mr. Nuzzo's policies are in effect but argues the policies do not cover his injuries because the Accident subject to the policies did not cause them. *Id.* at 2-3. State Farm's arguments therefore go only to whether coverage applies for Mr. Nuzzo's injuries.

Because the doctrines of estoppel and waiver cannot bar insurers from disputing whether insurance policies cover losses or injuries, *see Gilley*, 17 F.3d at 781-82 (citing *Emps. Fire Ins.*, 133 So. at 629), State Farm cannot waive or be estopped from arguing the applicable policies do not cover Mr. Nuzzo's injuries. The Court therefore denies the Nuzzos' Motion for Summary Judgment [71].

C.      State Farm's Motion for Partial Summary Judgment [73][2]

State Farm moves for summary judgment on the Nuzzos' "claims for extracontractual damages, including their claims for punitive damages and attorneys' fees." Memo. in Support [74] at 1. State Farm only addresses the

---

[2] Local Uniform Civil Rule 7(b)(5) limits memorandum briefs to 35 pages. State Farm and the Nuzzos both violated this page limit on their summary judgment briefs, with State Farm's brief totaling 51 pages and the Nuzzos' totaling 48 pages. Parties are warned that, in the future, the Court will strike any pages that exceed the prescribed page limits without the leave of the Court.

extracontractual damages of punitive damages and attorneys' fees.[3] Under Mississippi law, punitive damages are available only when a claimant establishes "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). When punitive damages are available in a contract action, attorneys' fees are also available. *See Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 971 (Miss. 1999) ("In breach of contract cases, attorney fees are not awarded absent provision for such in the contract or a finding of conduct so outrageous as to support an award of punitive damages."). The Nuzzos' bring two claims for punitive damages and attorneys' fees—tortious breach of contract and gross negligence.[4] Am. Compl. [20], ¶¶ 49-78.

1.    Tortious Breach of Contract

The Mississippi Supreme Court recognizes claims of bad faith tortious breach of contract brought against "insurers who refuse to pay out on a valid claim." *James v. State Farm Mut. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1098 (Miss. 1996)). Such claims of bad faith extend to situations when "the resolution of an insurance claim is merely delayed rather than ultimately denied," though "Mississippi courts are skeptical of such claims." *Id.*

---

[3] If prejudgment interest can be considered "extracontractual damages," State Farm does not address this issue, and the Court does not consider it.

[4] These claims seek only punitive damages and attorneys' fees, as evidenced by the Amended Complaint's recitation of portions of § 11-1-65(a)(1). *See* [20], ¶¶ 61, 76 (stating State Farm's actions were taken "with actual malice, and/or gross negligence which evidences a willful, wanton or reckless disregard of the rights of Plaintiff Al").

(gathering cases). The Nuzzos argue—without citation to any legal authority—that State Farm constructively denied Mr. Nuzzo's claim for uninsured motorists insurance benefits. But there is no evidence in the record that State Farm ever denied Mr. Nuzzo's claim. In fact, there is uncontroverted evidence that State Farm unconditionally paid $145,595.45 on Mr. Nuzzo's claim after the filing of this suit. Tender Letters, Ex. D to Motion [73-4]. Although "[a]t some point, an insurance company's conduct may reveal such a refractory attitude, such as rejecting reasonable responses from its claimant despite verbal indications of flexibility, that a denial might arise from what superficially appears to be negotiation," the Nuzzos produce no evidence that State Farm has presented such a "refractory attitude" here. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 274 (5th Cir. 2008). For that reason, only State Farm's alleged delay-of-payment is before the Court.

Determining whether summary judgment is appropriate on a bad faith delay-of-payment claim "is a highly fact-sensitive analysis." *James*, 743 F.3d at 70. To refute summary judgment, the Nuzzos must establish three elements: "1) State Farm had a contractual obligation to [Mr. Nuzzo]; 2) State Farm lacked an arguable or legitimate basis for its delay in paying [his] claim; and 3) State Farm's failure resulted 'from an intentional wrong, insult, or abuse as well as from such gross negligence as an intentional tort.'" *Id.* (quoting Jeffrey Jackson, *Miss. Ins. Law & Prac.* § 13:2 (2012)). State Farm does not argue it lacked a contractual obligation to Mr. Nuzzo but instead argues its delay in payment was due to its legitimate investigation of the claim and not from any intentional wrongdoing.

8

The Mississippi Supreme Court defines an arguable or legitimate basis for delay as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort." *Caldwell*, 686 So. 2d at 1096 (quoting *Blue Cross & Blue Shield v. Maas*, 516 So. 2d 495, 496 (Miss. 1987)). State Farm's initial burden is "low" as "it 'need only show that it had reasonable justifications, either in fact or in law' for its actions." *James*, 743 F.3d at 70 (quoting *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, (5th Cir. 1992)). Once State Farm asserts an arguable or legitimate reason, the burden shifts to the Nuzzos to show that State Farm has no arguable reason. *Id.* (citing *Caldwell*, 686 So. 2d at 1097).

State Farm argues that payment was delayed because it was actively investigating Mr. Nuzzo's claim. This investigation, State Farm contends, involved determining causation—a "significant question" because of the extent of Mr. Nuzzo's alleged injuries, the length of time between the Accident and his claim, the damage to his vehicle, and his previous accident in 2007. Memo. in Support [74] at 19-20. The difficulties State Farm encountered gathering Mr. Nuzzo's medical records, which State Farm needed for a full analysis of the claim, further delayed its investigation. *Id.* at 23. Once State Farm received Mr. Nuzzo's complete medical records, State Farm required more time for their experts to review and evaluate the claim. *Id.* at 23-24.

The Nuzzos argue that Mr. Nuzzo signed multiple authorizations to allow State Farm to receive his medical records and that State Farm should not have

encountered difficulties in retrieving them. Second Memo. in Opp. [107] at 6. Further, they contend that, after State Farm received the medical records, Mr. Nuzzo's adjuster valued the claim at $563,000.00, and both the adjuster and his supervisor recommended paying this sum. *Id.* at 7. State Farm did not approve this payment, but "arbitrarily and capriciously" adjusted it down to $145,000.00. *Id.* at 7. The Nuzzos argue that State Farm's downward adjustment of their claim was without cause. *Id.* at 7-8.[5] None of the Nuzzos arguments are supported by record citations.

Mississippi law recognizes that "an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts." *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 187 (Miss. 1994) (quoting *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1985)). A proper investigation requires "at a minimum . . . mak[ing] a reasonable effort to secure all available medical information relevant to [the policyholder's] claim." *Id.* (quoting *Crenshaw*, 483 So. 2d at 272).

Mr. Nuzzo's accident occurred on April 8, 2016. Nuzzo Depo., Ex. A to Motion [73-1] at 3:9-16. Mr. Nuzzo filed a claim with State Farm almost four months later. *Id.* at 13:3-7. State Farm's records show that it requested all medical providers to provide medical bills related to Mr. Nuzzo's claims by October 19, 2016. Claim File

---

[5] The Nuzzos also contend that State Farm's late retention of experts in adjusting Mr. Nuzzo's claim was in bad faith. First Memo. in Opp. [105] at 26-29. Because State Farm's retention of experts was delayed by the difficulty it had in obtaining medical records, any delay here would only constitute bad faith if State Farm failed to act in good faith to obtain the medical records.

Excerpts, Ex. B to Motion [73-2] at 63. On October 28, 2016, State Farm requested complete medical records to determine causal relation. *Id.* at 62. The Nuzzos do not contend that the time between the claim's filing and the records request falls outside the required "reasonable effort." *See Lewis*, 637 So. 2d at 187 (citing *Crenshaw*, 483 So. 2d at 272).

The unrefuted record shows State Farm worked to get Mr. Nuzzo's medical records, including having Mr. Nuzzo sign multiple authorizations. Claim File Excerpts, Ex. B to Motion [73-2] at 11-12, 14-25, 59. Despite these efforts, as late as October 2018, State Farm still had not received medical records from at least three of Mr. Nuzzo's medical providers. *Id.* at 11. State Farm retained experts in October 2018 once it received all relevant medical records. *Id.* at 10. The experts provided reports to State Farm in December 2018. *Id.* at 8-9. State Farm completed its review by January 23, 2019, with the adjuster recommending a compromised value of $145,595.45, because of causation issues between Mr. Nuzzo's injuries and the Accident. *Id.* at 6. The adjuster then sought authorization for this amount about two weeks later. *Id.*

Before State Farm tendered this amount, Mr. Nuzzo's attorney sent a letter to State Farm dated February 25, 2019, requesting State Farm advise by March 15, 2019, whether it would pay Mr. Nuzzo's claim. Izykowski Depo., Ex. 2 to Response [104-2] at Ex. 16. State Farm responded, stating that it was not denying Mr. Nuzzo's claim and was open to settlement discussions. *Id.* at Ex. 17. Rather than engage in settlement discussions, the Nuzzos filed the current action. Compl. [1].

Though the Nuzzos frame their bad-faith argument as delay-of-payment, the crux of the Nuzzos' response is that State Farm "arbitrarily and capriciously reduced the value of the claim." Second Memo. in Opp. [107] at 7. The Nuzzos essentially argue that State Farm wrongfully undervalued Mr. Nuzzo's claim. *Id.* at 7-8. This argument is the quintessential "pocketbook dispute."

A "pocketbook dispute" exists where parties agree that coverage exists but disagree "as to the amount of med-pay benefits available." *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 137 (Miss. 1998) (quoting lower court ruling). The Mississippi Supreme Court has held that such a dispute "does not rise to the heightened level of an independent tort." *Id.* at 139; *see also Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 634 (5th Cir. 2015) (citing *Cossitt*, 726 So. 2d at 137) ("[W]e agree with the district court that the parties were engaged in a disagreement over the value of the claim, a so-call[ed] 'pocketbook dispute,' which cannot support a claim for bad faith.").

The Nuzzos insist that this is not a pocketbook dispute and attempt to distinguish the cases State Farm cites. In those cases, they contend, "the respective insured claimants were offered or had received benefits relatively promptly after the evaluations" while "[n]othing whatsoever was offered to Al Nuzzo on his UMBI claim." Second Memo. in Opp. [107] at 11. This argument, however, disregards the fact that State Farm tried to open settlement negotiations on Mr. Nuzzo's claim once State Farm completed its evaluation. *See* Claim File Excerpts, Ex. B to Motion [73-2] at 6; Izykowski Depo., Ex. 2 to Response [104-2] at Exs. 16-17.

Because the Nuzzos have presented no evidence refuting State Farm's asserted reasonable justifications for delay, and because the dispute between the Parties is a pocketbook dispute, the Court finds summary judgment is appropriate on the Nuzzos' bad faith delay-of-payment claim. The Court therefore grants State Farm's Partial Motion for Summary Judgment [73] on this claim and dismisses it with prejudice.

2.     Gross Negligence

Neither Party specifically addresses the Nuzzos' gross negligence claim. Rather, Parties' arguments focus only on the tortious breach of contract claim. That said, State Farm's motion generally argues the Nuzzos are not entitled to extracontractual damages. *See* Memo. in Support [74] at 28-29. If the Nuzzos intend to argue at trial that they are entitled to these damages under their gross negligence claim, the Nuzzos have the burden on summary judgment to raise this argument and produce evidence in response. They failed to do so. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."). Furthermore, as discussed above, *see supra* Section II.C.1, gross negligence is an intentional wrong on which a claim for tortious breach of contract can be based. *James*, 743 F.3d at 70 (citing Jeffrey Jackson, *Miss. Ins. Law & Prac.* § 13:2 (2012)). In fact, the Nuzzos' pleadings explicitly connect their gross negligence claim to their tortious breach of contract claim. *See* Am. Compl. [20],

¶ 76 ("In acting in gross negligence and tortiously breaching the contract between Defendant State Farm and Plaintiff Al, . . . State Farm acted with actual malice, and/or gross negligence which evidences a willful, wanton or reckless disregard to the rights of Plaintiff Al and others."). Because the Nuzzos fail to produce sufficient evidence for their tortious breach of contract claim, they also fail to establish their gross negligence claim. For these reasons, the Court grants State Farm's Partial Motion for Summary Judgment [73] on this claim as well and dismisses it with prejudice.

III.    State Farm's Motion to Strike [75]

State Farm asks that the Court exclude the report and testimony of the Nuzzos' expert, Louis G. Fey, Jr., under Federal Rule of Evidence 702. Mr. Nuzzo designated Fey as an expert to evaluate State Farm's handling of his claim. Fey Report, Ex. B to Motion to Strike [75-2] at 2. Fey's expert testimony, however, is relevant only to the Nuzzos' claim of bad faith delay-of-payment that the Court has dismissed. *See supra*, Section II.C.1. As a result, Fey's report and testimony are not relevant to the Nuzzos' remaining breach of contract and loss of consortium claims. The Court therefore denies the Motion to Strike [75] as moot without prejudice.

IV.    Motions in Limine

A.    Standard

The purpose of a motion in limine is to preclude opposing counsel from "mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by

14

the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *Parker v. Tyson Foods, Inc.*, --- F. Supp. 3d ---, 2020 WL 6572624, at *1 (S.D. Miss. 2020) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)). Though the granting of a motion in limine "does not preclude the party sponsoring the evidence from revisiting the issue at trial," the issue must be raised "outside the jury's presence." *Id.* (quoting *United States v. Beasley*, No. 3:20-CR-36-DPJ-LRA, 2020 WL 6438255, at *1 (S.D. Miss. Nov. 2, 2020)).

B.      State Farm's Motion in Limine to Bifurcate Trial [79]

State Farm asks the Court to bifurcate the proceedings at trial into two phases—phase one for contractual damages and phase two for extracontractual damages. Because the Court had dismissed all claims for extracontractual damages, *see supra* Section II.C, the Court denies this motion as moot.

C.      State Farm's Motion in Limine to Preclude Testimony, Evidence, and Argument Related to the Interpretation of Insurance Policy Provisions, Mississippi Law and State Farm's Guidelines [81]

State Farm asks the Court to preclude the Nuzzos from presenting to the jury "[a]ll testimony, evidence, and argument relating to the interpretation of State Farm's policy, Mississippi law, and State Farm's guidelines." [81] at 2. The Nuzzos contend such testimony, evidence, and argument are relevant to their claims and should go to the jury.

The Court grants State Farm's motion as it relates to interpreting the State Farm policies. Contract interpretation is a question of law and is therefore outside

15

the purview of the jury. *Harris v. Harris*, 988 So. 2d 376, 378 (Miss. 2008). The Nuzzos misinterpret State Farm's motion as requesting that this Court exclude any evidence of the insurance policies relevant here. State Farm, however, argues only that the jury should not hear evidence and argument that seek to interpret the insurance policies. The Court agrees with State Farm, and the Court precludes the Nuzzos from presenting such evidence and argument to the jury.

The Court also grants State Farm's motion as it relates to interpreting Mississippi law. Interpretation of the applicable Mississippi law is a question of law for the Court. The Nuzzos argue they should be able to cross-examine State Farm personnel "as to what Mississippi law required them to do in the handling of Al Nuzzo's claim." Response [97] at 4. Because this line of questioning is relevant only to the Nuzzos' bad faith claim that the Court has dismissed, the Court excludes evidence or argument on interpreting Mississippi law.

Finally, the Court grants State Farm's motion as it relates to interpreting State Farm's guidelines. The Nuzzos seek to introduce evidence and argument of State Farm's claim-handling guidelines to support their claim of bad faith. Response [97] at 4-5. Because the Court has dismissed this claim, and the Nuzzos do not argue the guidelines are relevant to any other claim, the Court excludes evidence or argument on State Farm's claim-handling guidelines.

For these reasons, the Court grants State Farm's Motion in Limine [81].

D.     The Nuzzos' Motion in Limine to Preclude Evidence for Argument as to Lack of Contact Between Vehicles in Accident [96]

The Nuzzos ask the Court to preclude State Farm from introducing any argument or evidence that there was no physical contact between the two vehicles involved in the Accident because State Farm admits that fact in its pleading.[6] State Farm argues that such evidence is relevant to causation and essential to its defense.

"An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). The Nuzzos' Amended Complaint alleges:

> 12.     On or about April 8, 2016, Plaintiff Al was operating his vehicle on I-55 headed south between Meadowbrook Road and Lakeland Drive as those streets cross over I-55 in Jackson, Hinds County, Mississippi.

> 13.     At the same time, an unidentified motorist ("the Hit-and-Run Motorist") drove or allowed his vehicle to enter Plaintiff Al's lane "side swiping" and/or making contact with the front corner of Plaintiff Al's vehicle (hereinafter "the Accident").

[20], ¶¶ 12-13. State Farm's Answer to the Amended Complaint "accepts . . . as true" the allegations in Paragraphs 12 and 13 of the Amended Complaint. [21], ¶¶ XII-XIII. State Farm's Twenty-Fifth Defense also explains its position: "The Defendant would affirmatively state that it has, at this time, resolved the factual question of whether Plaintiff made actual physical contact with a phantom vehicle in Plaintiffs' favor in a good faith effort to reach an amicable resolution of Plaintiffs' claim." *Id.*, p. 25. State Farm goes on in its Twenty-Sixth Defense to "reserve[] the

---

[6] The Nuzzos also reassert their arguments under the doctrines of waiver and estoppel. As explained in the Court's analysis of the Nuzzos' Motion for Summary Judgment, these doctrines do not apply. *See supra*, Section II.B.

17

right to disclaim coverage should the evidence reveal that Plaintiffs' vehicle did not make actual physical contact with a phantom vehicle." *Id.*

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The Fifth Circuit has held that the federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 436 (5th Cir. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). The Court finds that a holistic reading of State Farm's Answer [21] does not support an admission that a phantom vehicle made physical contact with Mr. Nuzzo's vehicle. Rather, justice requires that the Court find State Farm reserved its right to discover and present evidence as to actual physical contact. The Court therefore denies the Nuzzos' motion [96] insomuch that it asks the Court to exclude evidence based on State Farm's pleadings. The Nuzzos, however, will be allowed to argue at trial for the exclusion of this evidence on other grounds.

    E.    The Nuzzos' Motion in Limine Re: (1) Collateral Source Payment of Income and Medical Expenses; and (2) Expert Testimony as to Legal Conclusions [115]

The Nuzzos assert two arguments in this motion. First, they argue that the collateral-source rule bars evidence of disability and Medicare payments. Second, they contend the Court should bar State Farm from presenting certain expert testimony.

1.     Collateral-Source Rule

Under Mississippi law, "the collateral-source rule states that '[c]ompensation or indemnity for the loss received by plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the [defendant] in mitigation or reduction in damages.'" *Brooks v. Purvis*, 70 So. 3d 1166, 1172 (Miss. Ct. App. 2011) (quoting *Coker v. Five-Two Taxi Serv.*, 52 So. 2d 356, 357 (Miss. 1951)) (alteration in original). The rule applies "only when the indemnity or compensation is for the same injury for which damages are sought." *Id.* (quoting *Baugh v. Alexander*, 767 So. 2d 269, 272 (Miss. Ct. App. 2000)). The Nuzzos contend the collateral source rule requires the Court to exclude evidence of disability insurance payments Mr. Nuzzo received before the Accident. They also argue that the Court should exclude Medicare payments for Mr. Nuzzo's medical expenses from the Accident.

As State Farm points out, the disability insurance payments Mr. Nuzzo received before the Accident were not "for the same injury for which damages are sought," and therefore the collateral-source rule cannot apply to these payments. *See Brooks*, 70 So. 3d at 1172 (quoting *Baugh*, 767 So. 2d at 272). Though the Nuzzos also argue that the disability payments are not relevant, the Court finds issues of relevancy are premature at this stage, as evidence may become relevant at trial. The Court therefore denies the Nuzzos' motion as to disability payments.

The Nuzzos are correct, though, that the collateral-source rule bars evidence of Medicare payments for medical treatment for injuries caused by the Accident, as

such payments are "for the same injury for which damages are sought." *See id.* (quoting *Baugh*, 767 So. 2d at 272). State Farm argues that evidence of Medicare payments is relevant to its defense against the Nuzzos' bad faith delay-of-payment claim. Because the Court has dismissed this claim, the Court finds the Medicare payments are not relevant and are covered by the collateral-source rule. As a result, the Court grants the motion as it relates to these payments.

### 2.    Expert Testimony as to Legal Opinions

The Nuzzos asks the Court to exclude portions of the report from State Farm's expert, Jack C. Williams, Jr. Local Uniform Civil Rule 7(b)(2)(D) states that "[u]nless otherwise ordered by the Case Management Order, . . . motions challenging an opposing party's expert must be filed no later than fourteen calendar days after the discovery deadline." The Case Management Order [15] set the deadline for motions challenging experts as February 20, 2020. The Court later extended this deadline to May 20, 2020. Text Order dated March 19, 2020. The Nuzzos filed their motion challenging State Farm's expert six months after the deadline. The Court therefore denies the Nuzzos' motion [115] as untimely. [7]

## IV.    Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's

---

[7] The Court notes that the expert testimony the Nuzzos seek to exclude goes to whether State Farm acted in good faith. Because the Court granted summary judgment for State Farm on the Nuzzos' bad faith claim, *see supra* Section II.C.1, this testimony is unlikely to be relevant at trial.

decision. For these reasons, the Court DENIES the Nuzzos' Motion for Summary Judgment [71].

The Court GRANTS State Farm's Motion for Partial Summary Judgment [73] and DISMISSES WITH PREJUDICE the Nuzzos' claims for extracontractual damages, including punitive damages and attorneys' fees.

The Court DENIES AS MOOT State Farm's Motion to Strike Louis G. Fey, Jr. [75] and State Farm's Motion in Limine to Bifurcate Trial [79].

The Court GRANTS State Farm's Motion in Limine to Preclude Testimony, Evidence, and Argument Related to the Interpretation of Insurance Policy Provisions, Mississippi Law, and State Farm Guidelines [81].

The Court DENIES the Nuzzos' Motion in Limine to Preclude Evidence for Argument as to Lack of Contact Between Vehicles in Accident [96].

The Court GRANTS IN PART and DENIES IN PART the Nuzzos' Motion in Limine Re: (1) Collateral Source Payment of Income and Medical Expenses; and (2) Expert Testimony as to Legal Conclusions [115]. The Court precludes State Farm from offering any evidence that Medicare paid for Mr. Nuzzo's medical expenses from the Accident.

SO ORDERED AND ADJUDGED this the 17th day of March, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE